# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**BRUNSON ROBERTS**                                                                 **PETITIONER**

**V.**                       **CASE NO. 4:18-CV-193-JLH-BD**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                                               **RESPONDENT**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. Either party to this suit may file written objections with the Clerk of Court within 14 days of the date of this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

By not objecting, the right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

Brunson Roberts was convicted of several drug-related offenses in Pulaski County Circuit Court in 2003. He received an aggregate sentence of 33-years' imprisonment. (#9-2 at 5-19) He was released to parole on August 2, 2017. (*Id*. at 20)

Mr. Roberts was arrested again on October 28, 2017, and charged with aggravated assault on a family or household member, first-degree terroristic threatening, and third-

degree domestic battering.[1] (#9-3, #9-4) As a result of the new charges, the Arkansas Parole Board moved to revoke Mr. Roberts's parole. (#9-6 at 4-6) On November 8, 2017, Mr. Roberts attended a parole revocation hearing before Hearing Officer Lisa Wilkins. (#9-6) Prior to the hearing, Mr. Roberts was given notice of the conditions of parole he allegedly violated and also the date, time, and location of the hearing. (*Id.* at 1)

At the hearing, Officer Custer, who had reported to the scene of Mr. Roberts's arrest on October 28, 2017, testified that he and Officer Gavin responded to a call from a female regarding a disturbance at a residence in Little Rock. (*Id.* at 2) When he arrived, Mr. Roberts was outside the residence banging on the door with a knife. (*Id.*) The altercation apparently arose from Mr. Roberts's belief that the victim had taken his keys and prescription pain medication. (*Id.*) The victim told Officer Gavin that Mr. Roberts had put a knife to her neck. (*Id.*) Officer Custer testified that Officer Gavin had observed several "choke marks" on the victim's neck. (*Id.*)

Mr. Roberts cross-examined Officer Custer. (*Id.*) He also testified on his own behalf. He stated that he had taken the victim grocery shopping and that afterward, his "stuff came up missing." (*Id.*) He stated there was a commotion, and he decided to leave, but could not because his keys were missing.

Mr. Roberts also called a friend, Mr. Hagler, to testify. Mr. Hagler stated that he lived next-door to Mr. Roberts's mother in North Little Rock. Mr. Hagler stated that Mr.

---

[1] The Pulaski County Circuit Court *nolle prossed* the case on May 21, 2018. (#20 at 7) Still pending is case no. 60CR-18-1553, in which Mr. Roberts is charged with aggravated assault and second-degree battery for assaulting and choking a sheriff's deputy at the PCRDF. (#9-7)

Roberts had sent him texts between 3 p.m. and 6 p.m. on the 28th, and that the police had called him later to retrieve Mr. Roberts's truck. He stated he did not find a key or prescription medications in the truck. (*Id.*)

In a written hearing summary and disposition order, Hearing Officer Wilkins found, based on the testimony and exhibits presented, that Mr. Roberts had violated his parole. (#9-6 at 2-3, #9-7) Officer Wilkins revoked Mr. Roberts's parole and sentenced him to the Short Term Revocation Program (Program), which allows inmates to be released after 90 days, contingent upon good behavior and an approved parole plan. Under the terms of the disposition order, if Mr. Roberts failed to comply with Program requirements, his parole would be revoked and he would be sentenced to six months in prison. (*Id.*) The Board provided Mr. Roberts with a copy of the decision. (#9-6 at 3)

Mr. Roberts did not follow the Program's requirement to maintain good behavior during his 90-day incarceration at the Pulaski County Detention Facility. As a result, he was sent to the Arkansas Department of Correction to serve a six-month suspended revocation sentence. (#9-6 at 10)

Mr. Roberts was informed of his right to an administrative appeal of his revocation. (*Id*. at 7-8) He submitted a letter of appeal to the Arkansas Parole Board. (*Id*. at 12-13, #20 at 8-9 (pages 2 and 4 of the appeal letter)) The Board, however, affirmed the decision to revoke. (*Id*. at 11) Mr. Roberts did not seek judicial review of the Board's decision in the Pulaski County Circuit Court.

While Mr. Roberts was serving his Short Term Revocation sentence at the Pulaski County Regional Detention Facility ("PCRDF"), he received a disciplinary for possessing

3

a contraband razor. (#6 at 1-3) As a result of the disciplinary, Mr. Roberts was assigned to administrative segregation and lost privileges for 30 days.

### A. Mr. Roberts's Claims

In his amended petition, Mr. Roberts claims he was denied a police report at the revocation hearing and, consequently, could not prepare an effective defense. (#6 at 2) He also complains that Hearing Officer Wilkins violated his due process rights by failing to give him a statement of the factual evidence she relied on in finding that he had violated his parole conditions. (*Id*. at 2) Mr. Roberts further claims that he was prevented from mounting an effective appeal because he lacked a list of the evidence Hearing Officer Wilkins relied on.

Mr. Roberts also claims that his due process rights were violated during the disciplinary proceeding at the PCRDF when he was found guilty of shaving another inmate with a contraband razor. Mr. Roberts claims that, as a result of the lack of due process during the PCRDF disciplinary proceeding, he had to serve his full six-month revocation sentence. (*Id*. at 2) He also asks whether he was entitled to call witnesses at the disciplinary hearing and whether "the report" was proper given that it did not name the inmate he was shaving. (*Id*. at 2-3)

### B. Director Kelley's Response

Director Kelley responds that Mr. Roberts procedurally defaulted his due process claim regarding his parole revocation proceeding and also that the claim lacks merit. She further argues Mr. Roberts's claim regarding the ADC disciplinary proceeding while serving time on the parole revocation is not cognizable under 28 U.S.C. 2254.

4

### III. <u>Mootness:</u>

After Director Kelley responded to the petition, Mr. Roberts was released from custody. (#24) The Court ordered Mr. Roberts to identify specific, concrete injuries he is currently suffering to determine whether there is a current case-or-controversy under Article III, § 2 of the Constitution. See *Spencer v. Kemna*, 523 U.S. 1, 14-18 (1998). (#25)

Mr. Roberts responded to the order, stating that his habeas petition was "to be used for actual innocence." (#26) He contends that he is actually innocent of violating his parole. (*Id*. at 1) Additionally, he claims that he must maintain his petition so that the Court can "make [the] ADC correct his flat date by finding that Lisa Wilkins did in fact failed [sic] to give the Mr. Roberts due process by procedural law extending his total sentence of being off parole for an extension of 8 more months." (#26 at 1) Finally, Mr. Roberts states there is ongoing injury because the ADC violated its "own procedure" and keeps inmates in prison without, "due process in their parole revocation hearing." (#26 at 2)

Despite Mr. Roberts's contention that there is a current case-or-controversy, the Court recommends that Mr. Roberts's petition be dismissed as moot. In *Spencer v. Kemna*, supra, "the Supreme Court reasoned that an individual who challenges a parole revocation—and who has completed any resulting re-incarceration or parole term imposed—must demonstrate 'some concrete and continuing injury other than the now-ended incarceration or parole.'" *United States v. Stanko*, 762 F.3d 826, 828 (8th Cir. 2014) (quoting *Spencer*, 523 U.S. at 7).

To maintain this lawsuit, Mr. Roberts must establish "continuing 'collateral consequences'" from the revocation. *Id*. (quoting *Spencer*, 523 U.S. at 7). If Mr. Roberts cannot establish continuing collateral consequences, the case is moot. *Id*. (citing *United States v. Dunlap,* 719 F.3d 865, 867–68 (8th Cir. 2013) (per curiam) (dismissing a challenge to a supervised release violation as moot)).

The term "continuing injury" in habeas corpus cases is narrowly construed. For example, the possibility of a future parole hearing, of an enhanced sentence at a future hearing, impeachment of future testimony, or the inability to pursue damages for wrongful revocation are all insufficient to show a continuing injury. *Spencer*, 523 U.S. at 14-18.

Mr. Roberts has not alleged a continuing injury, other than his incarceration due to his parole revocation, and this does not constitute a current case-or-controversy. *Id*.; see also *Dunlap*, 719 F.3d at 867. Mr. Roberts asks the Court to order the ADC to correct his "flat date." It is unclear what this means. Regardless, Mr. Roberts has not met his burden to establish that his parole revocation sentence changed anything other than his ability to be free on parole for the six-month period he was incarcerated after his parole was revoked. Because Mr. Roberts has already served the six-month incarceration period triggered by the revocation of his parole, his challenge to that sentence is moot. Stated another way, there is no relief this court could grant, even if it found a lack of due process in the revocation proceeding.

## IV.     **Procedural Default:**

Even if Mr. Roberts's habeas petition were not moot, his claim is procedurally defaulted. Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); see also 28 U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts).

Here, Mr. Roberts appealed Officer Wilkins's decision to revoke his parole to the Parole Board, but he did not seek judicial review of the Board's decision under the Administrative Procedure Act. The relevant Arkansas statute provides:

> In cases of adjudication, any person, except an inmate under sentence to the custody of the Department of Correction, who considers himself or herself injured in his or her person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter.

ARK. CODE ANN. § 25-15-212(a). While the language of the statute appears to bar Mr. Roberts from seeking relief under the Act, as Respondent Kelley points out, the Arkansas Supreme Court found the portion of the statute barring inmates from bringing constitutional claims to be unconstitutional. *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991). Mr. Roberts was required to seek state judicial review of his constitutional challenges under Arkansas's Administrative Procedures Act in order to exhaust his state remedies.

7

Under the statute, Mr. Roberts was required to file a petition with the circuit court within 30 days after service of the Parole Board's final decision affirming his revocation. *Id.* at § 25-15-212(b)(1) and (2). Because Mr. Roberts did not file a petition with the circuit court and the deadline for filing has passed, his claims are procedurally defaulted.

A habeas petitioner's default can be excused, but only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Roberts offers no valid explanation to excuse his procedural default.[2]

Mr. Roberts contends that he is "actually innocent" of the parole violation. (#20 at 1, #26 at 1) The Supreme Court has narrowly defined actual innocence in this context to require that the innocence claim be supported by both new, reliable evidence that was *not* available at trial *and* that demonstrates, more likely than not, that no parole revocation judge would have revoked parole in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 327-38 (1995); *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015). For evidence to

---

[2] Mr. Roberts claims that he did not receive the "evidence sheet" from the revocation hearing (#20 at 2, 3-4) and may claim this is cause to excuse his default, but the evidence sheet was not "new evidence" of his actual innocence. Further, Mr. Roberts was not hampered by not having the evidence sheet in preparing a timely internal appeal to the Parole Board. To the extent Mr. Roberts may claim that lack of knowledge of the *Clinton* decision justifies his procedural default, courts in this district have consistently held that this is not cause to excuse procedural default. *Johnson v. Kelley*, No. 5:14CV00176 DPM/JTR, 2015 WL 1167184, at *4 (E.D. Ark. Feb. 20, 2015), report and recommendation adopted as modified sub nom. *Johnson v. Hobbs*, No. 5:14-CV-176-DPM-JTR, 2015 WL 1167166 (E.D. Ark. Mar. 13, 2015) (a *pro se* litigant is still charged with knowing the law relevant to his habeas claims) (citing *Weeks v. Bowersox*, 106 F.3d 248, 249 (8th Cir. 1997) ("A prisoner's illiteracy and *pro se* status are not cause.")).

be considered "new," it must not only have been unavailable at trial, but also, not discoverable through the exercise of due diligence. *Nash*, 807 F.3d at 899 (citing *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001)).

A supervised-release revocation hearing is, however, not a trial. At such a proceeding there is no presumption of innocence, no right to a jury, and the government is not required to prove the violation beyond a reasonable doubt. This is because revocation of parole deprives an individual of *conditional* liberty that is dependent on the observance of special parole restrictions. *United States v. Black Bear*, 542 F.3d 249, 253 (8th Cir. 2008).

Mr. Roberts rests his actual innocence claim on the fact that the Court has *nolle prossed* the charges arising from his October 28 arrest.[3] (#20 at 1) While the dismissal of the charges is a new development in Mr. Roberts's underlying criminal case, it is not new evidence of his actual innocence of violating conditions of his parole. At the parole revocation hearing, Officer Custer testified that he found Mr. Roberts with a knife outside the victim's house pounding on the door. He also testified that there were choke marks on the victim's neck consistent with her story. In light of the preponderance of the evidence standard applicable at a revocation hearing, the Court cannot say that it is likely that the outcome of the revocation hearing would have been different had the domestic battery

---

[3] Mr. Roberts also alleges that he is actually innocent because there were no pictures submitted as evidence at the revocation hearing. (#20 at 1) The lack of photographs does not constitute "new evidence" to establish innocence and is of no consequence given the testimony of Officer Custer who reported to the scene.

charges been dismissed prior to the hearing. Consequently, Mr. Roberts's claims are procedurally defaulted.

## V.     Mr. Roberts's Claims Lack Merit:

Even if Mr. Roberts had not procedurally defaulted his claims, they lack merit. A parolee facing a revocation hearing has a clearly established right to minimal due process. *Morrissey v. Brewer*, 408 U.S. 471, 483-491 (1972). Mr. Roberts's due process rights included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id* at 489.

Here, there is no dispute that the Parole Board provided Mr. Roberts with the process he was due in his parole-revocation proceedings. He had notice of the alleged violation as well as the time and location of the hearing. At the hearing, he appeared, gave testimony, called a witness in his defense, and cross-examined the State's witness. An administrative hearing officer presided over the hearing, and Mr. Roberts was provided a written statement of reasons for the revocation.

Mr. Roberts complains that he could not prepare a defense because he was not provided the police report prior to the hearing, but under the *Morrisey* decision, Mr. Roberts was not entitled to prior notice of anything more than the asserted parole

10

violations. *Morrisey*, 408 U.S. at 489. The State disclosed its evidence by calling witnesses at the hearing. Mr. Roberts was allowed to cross-examine the witnesses and present testimony. Mr. Roberts's claim that he was denied due process at his parole-revocation hearing lacks merit.

Mr. Roberts also claims that he was denied due process in connection with the disciplinary he received at the PCRDF, which resulted in 20 days' loss of privileges and administrative segregation. (#6 at 1-3) As the Court explained in a prior order (#3), this claim challenges conditions-of-confinement, rather than the fact or length of confinement and cannot be considered in a habeas corpus case. See *Heck v. Huphrey*, 512 U.S. 477, 481-82 (1994); *Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014).

## VI. Certificate of Appealability:

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Roberts has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Mr. Roberts has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

## VII. Conclusion:

Mr. Roberts's habeas corpus claim arising from his 6-month revocation sentence is moot because he has served that sentence and was released from custody. His habeas corpus petition (#1) and amended petition (#6) should be DENIED, and the case

DISMISSED, with prejudice. The Court further recommends that no certificate of appealability be issued.

DATED this 10th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE